# EXHIBIT

# 8



# 72nd Student Senate
# Judiciary Committee
# Date: 7/14/20

**Call to Order:** 2:05 p.m.
**Members Present:** Chair Leckie, Vice Chair Chabot, Senator(s) Alvarez, Cusnier, Gabriel, Little
**Members Tardy:** Senator(s)
**Members Excused Absent:** Senator(s)
**Members Absent:** Senator(s) Garcia, Rossi
**Guests:** Abby Slater, Senait Armstrong, Jessica Mendoza-Velasco, Jack Rowan, Marcus Williams, Hannah Llende, Matthew Harris, Ryan Villacorta, John Lystad, Franceska Edouard, Jonathan Marcus, Shayna Cohen Senators: Gonzalez, Murray, Lavender, Hinks, Gnanam, Gerdts, Sam, Wang

**Announcements:**
- Chair - None
- Vice Chair - Investigative Board meets Thursday at 7
- Members - X
- Guests - X

**Committee Business:**
- Confirmation Hearing for temporary Chief Justice Candidate Abby Salter
- Presentation of Evidence from the Subpoena direct to President Levin

**Old Business:**
- X

**New Business:**
- **Confirmation**
    - Opening Statement
        - Salter: Hello. I am about to start my third and final year at law school. This position will allow me to use the skill I have learned to help the Student body. I am looking to have an efficient and non-partisan court and have a quick turnaround time and be open to everyone who needs us.
    - Technical, Non-Debatable
        - Alvarez: Do you have any relationship with any member of SGA?
        - Salter: No
        - Alvarez: Have you at any time represented yourself as being a justice of the court before confirmation

- - - Salter: Yes, I wrote a memorandum at the request of Student Body President Levin and ask what I should put in the from designation and he responded "temporary Chief Justice"
  - Questions related to position, experience, or future goals
    - Alvarez: A previous issue in the court with the chief justice was that he had to recuse himself from many cases due to involvement with RSOs Do you foresee any conflicts that would cause yourself to do this?
    - Salter: No. I am a member of the Student Bar Association but otherwise no association. And I went to UCF for my undergrad so no affiliation with RSOs
    - Alvarez: He made many appointments by designations for vacancies in which people served for a year. If you are placed in this position, what would be your interpretation of this?
    - Salter: Short-term because this is a big deal. I would want to avoid that as much as possible seeing the importance of the Judicial Branch. I would try doing this in the first place
    - Alvarez: The most common types of cases tend to be appeals from elections violation, which tend to be repeats of violations from previous cases. Do you believe that the court would be in order to deny certiorari?
    - Salter: That is hard to answer as each case may be unique and have different facts in each case.
    - Cusnier: Do you know of any cases currently before the court?
    - Salter: Only from what was spoken in the last senate meeting.
    - Cusnier: Are there any cases where you would have to recuse yourself due to moral reasons?
    - Salter: I do not foresee this
    - Little: Can you describe a past situation in which your morals were compromised and how did you deal with that?
    - Slater: Thankfully nothing has come up. But in my job confidentiality is kept in every case.
    - Alvarez: What is your current understanding of our Student body Statutes and other documents?
    - Salter: Most of what I have gone through is what is entailed in my position.
    - Alvarez: In 510.B2 refers to the leave of absences of the judicial branch and states the chief shall not take a leave of absence, related to the summer session, do you think it is legally permissible for the senate to be considering you now rather than through an official presidential nomination?
    - Salter: That is something I looked into and found legally permissible. I wish that this temporary stuff was brought to the Senate earlier. However, in the constitution, it says a justice serves until they graduate, resign of are impeach. So since Chief Justice Keller has graduated he is released from the court. This will need to be addressed in the future, and I hope to do this in the spring with Judiciary should I be appointed permanently.
    - Alvarez: 510 also states it supposed to be the chief justice who makes summer nominations, since the previous chief graduated, to that end how can we be inline to consider you and associate justices?
    - Salter: Part of me wants to say that we shouldn't be considering these appointments as I can see it both ways. Part of it is if he has been released then why should we appoint them and it comes down to the

- timeline of when the former Chief Justice discussed nominations with the Student Body President
  - Little: Any communities you plan to protect or advocate for?
  - Salter: Everyone, no bias to any one group over another.
  - Gnanam: What vote on the 2015 case on same-sex marriage, Obergefell v. Hodges?
  - Salter: I would have been in the majority
  - Gnanam: What would your vote on Bostock v. Clayton County had been?
  - Salter: I would have been in the majority in banning work discrimination based on sexual orientation
  - Alvarez: Many argue we use judicial supremacy, do you subscribe to that string of logic? If no, why not?
  - Salter: No because I see the Judiciary as interpreting the law and making sure it is properly applied. If the court interrupts different from the original intention then it is up to the legislature or executive to fix it. So Yes I do subscribe to judicial supremacy in these decisions.
  - Alvarez: Our SGA website has opinions from previous justices through 2011, do you plan to review them prior to making decisions?
  - Salter: Yes I plan on doing both
  - **Alvarez Moves to go onto question on character, Cusnier seconds**
- Questions related to character or any other questions
  - Alvarez: About the June 23rd memo, please clarify to the committee to why you listed yourself as acting chief justice rather than a nominee when drafting that letter? I would like to the know full story from your perspective.
  - Salter: I want to apologize because in hindsight that was not appropriate. I had been in contact with President Levin and he asked for help. And when I asked him what I should put on it he said this so that is why I put that.
  - Cusnier: Why do you believe you are the best fit for the job compared to other applicants?
  - Salter: I believe I have more of a leadership attitude and have improved time management skills with not only myself but for the other justices. I feel completely confident in keeping up with communication with the other justices and being a leader.
  - Alvarez: Normally when we receive forwarding letters, we receive resumes. Due to the circumstances, we have not in this case. What are the experiences that make you fit for the job?
  - Slater: I have been involved in the legislature prior to law school. I work as a policy intern previously with a tourism agency. Once in law school, I worked in a similar capacity with a lobbying firm. In law school, I have learned how to do that job of writing briefings concisely. This fall I worked as an intern in the house. Currently, I am working for a national senate committee on election law. At the end of the day, it is about research, interpretation, and using the facts to create opinions. I plan on using all of these in my future position.
  - Alvarez moves to enter deliberations, Little seconds
  - Alvarez Withdraws
  - Gnanam: What education have you experienced in regard to the LGBTQ+ community? If none, how do you plan to educate yourself on this community?

- - ■ Salter: I have had much but I plan to do a lot of research involving court case to focus on the legal problems the community faces
    - ■ Gnanam: How do you plan to be fair and impartial to such a diverse student body that may have beliefs that go against your beliefs.
    - ■ Salter: Taking the person away from the situation and not looking at who but the facts of the case and the law and taking personal opinions out of it as that is not acceptable. I will focus on the facts and how they fit into the law
    - ■ Gnanam: What does discrimination mean to you? How has your legal experience shaped the definition for you/ what is your experience with discrimination cases?
    - ■ Salter: If there is a group of 5 people and 1 in treated differently. I know that this can come from certain identities. Discrimination is the different treatment of someone. In the legal capacity, I have not dealt with this, working in the legislature, which is mainly focused on election law.
  - **Alvarez moves to enter deliberations,**
  - **Little seconds**
  - Closing:
    - ■ Salter: Thank you all for having me. I know there has been confusion and I apologize. I want to reiterate my ability and passion for serving in FSU SGA. Serving would be an honor. I know this committee is super important and I want to make sure everything is based on applying the right law and I want to focus on representing FSU. I think that I have the skills necessary to run a good court and look forward to working with you all
  - Deliberations
    - ■ Alvarez: If the committee members have not read my statement of dissent I will summarize it now. On this basis, I cannot in good faith vote yes. I do believe that she will return in the fall in the proper format and her answers should be considered then. On the basis of the balance of powers and the plain language of our documents, I cannot move forward with the current candidate with these circumstances. To some level, she had agreed with this. So I will be voting no.
      - • REFER TO STATEMENT OF DISSENT
    - ■ Chabot: The statue says chief justice cannot take leave of absence over summer, but chief justice is gone over summer. How can we clear up this discrepancy? She was a good candidate and sticks to the letter of the law, however, is this legal? We are in a grey area.
    - ■ Little: I share Senator Chabot's sentiments in that I think we are in a legal and moral grey area. I understand Alvarez concerns with 510 however seeing how we have confirmed multiple justices already, would we be doing a disservice to those people and the Chief Justice if we chose not to confirm them. I agree this is a grey area but would we be doing a disservice by not confirming them, On a different note I agree that she was very objective and good about referring to the law
    - ■ Alvarez: For permanent vacancies, the only avenue is a presidential appointment within 6 weeks. 510 is only about leaves of absence of sitting justices. In the precedent that we set, it is better to correct incorrect precedents than follow that incorrect precedent. I think it is our job to hold ourselves to our constitution regardless of the decision of the senate. If

Exhibit 8, Page 004

- the proper procedure had been followed then this wouldn't have been as big of a deal.
- Chabot: With that clarification, I can not vote in favor. I think that she is an amazing candidate and would be perfect for the job had her appointment been legal, but seeing as how this appointment would violate our statutes I can't in good faith vote yes. I hope that she returns in the fall under the correct procedures.
- Cusnier: Personally, I agree with everything that has been said. The only worry I have is that already appointed previous candidates would be left without a leader. I don't want that to backfire however I do not what to go against our law
- Alvarez: This is already covered in our constitution. The Student Body President shall appoint an acting Chief Justice from the associate justices in the vacancy of the position.
- Cusnier: That brings forward a concern. Ms. Salter is obviously a good candidate. By not forwarding her we are put in a position where there may not be a good leader in the position.
- Little: I agree with Senator Cusnier. The process for the three Associate Justices weren't as thorough and so given that we have through interviewed her I feel more confident appointing her to the position over the others
- Alvarez: I double-checked the statute and 510c3 shall be on notice that their term ends for this year on July 31st or July 1st if we go on the law school calendar. If we pass or fail her, in both scenarios the timeframe would be very limited in scope and I don't think that it would be enough time to make decisions. I understand the concerns but because of the timeline and ambiguity of 510 I don't believe we should revert to a false precedent.
- Little: I have confidence more in this candidate than the other three that have been confirmed given the depth and scope of her interview today
- Cusnier: I believe we should forward this candidate because (1) we have already confirmed the other three and (2) we do not have much time for them to make decisions. Forwarding them now would allow them to get acquainted with the position. Not confirming her would be a disservice to them.
- Alvarez: With the concern of the Student Body President appoint one of the current three, this is the point I raised on the floor with all of them being sent here rather than hearing them on the floor. We should hold ourselves to a higher standard than what was done on the floor. I believe that when they return in the fall in the proper format, there is nothing stopping them from meeting informally beforehand to work together and discuss future plans. Nothing is stopping her from coming back in the fall and showing her dedication to this position. I stand by what I have written and said and that the way they were forward should mean that we don't confirm her
- Gnanam: These questions that I asked were crafted in understanding implicit bias in regards to the LGBTQ+ community. That involved not understanding what these cases were and the importance of these cases. Her limited knowledge is very concerning and frustrating. Since there is such a sensitive case on the docket it is very concerning what the

- - - repercussion of this could be. I don't feel comfortable having her preside over this case.
      - Chabot: I have confidence in her ability to put aside her implicit bais and follow the letter of our rules and statutes as she stated multiple times in her interview. In the case on the docket, our Rules are very clear that we may remove a sitting senate president for any reason the senate believes in necessary and I think she will see this in our rules
  - Alvarez moves to forward the candidate, Cusnier seconds
  - Vote
    - Alvarez- No
    - Chabot- No
    - Cusnier- Yes
    - Gabriel- Yes
    - Little- Yes
  - **RESULT**
    - **CANDIDATE PASSES**

- **Evidence Presentation from the Subpoena**
  - Leckie: I have received communication from the Attorney General regarding the Subpoena
  - Alvarez: I am willing to agree that 24-hour notice should be given. I disagree with the requirement for a signature from President Daraldik. I was wondering If the committee would be open to reintroducing the subpoena with these corrections
  - Little: I agree that we should reissue the subpoena
  - Cusnier: My only worry is that considering this is the last meeting of the committee, would this become an issue that would be delayed to fall. Would there be someone who would take this over? What is the goal?
  - Alvarez: If we introduce another in a format acceptable to exec, the soon we get this info the better. It would allow people to read over this information and make decisions. Depending on the contents, the decision regarding this will be put off to fall. I think it is in the best interest of issues a subpoena that is enforceable so that we have time to make a decision and move forward in the fall
  - Cusnier: What will happen if this subpoena is found out of order yet again?
  - Alvarez: I am open and willing for the chair to call another meeting, say Friday. I am disappointed that we were unable to get this prior to senate. We could even have this information presented to the Senate tomorrow. With exec taking the position of selective reasoning, I believe that we should continue to push forward. If we are open to it I believe it would be best to meet again this week or to even have them presented tomorrow in Senate. This is a question for the chair but there may be standing for the info to be sent to the chair and then distributed. In that case, it would be 24 hours upon reception of the subpoena. I think the best options are to set a meeting this week and have them presented there or having the documents sent to the chair in a certain window of time. I think the latter would be best.
  - Leckie: While I do think it is legally permissible to send the documents directly to me but I think it would be more proper for them to present them themselves to the committee at a different meeting time. I would like to hear the opinions of the committee
  - Little: Can you repeat those options, please?
  - Alvarez: 1) Have the chair call a meeting for Friday and set the time for the evidence to be presented then

2) Set a 5 pm deadline for tomorrow and send those documents to the chair directly for distribution to the committee and allow the senate to review these before the full Senate tomorrow.
- Cusnier: I briefly reviewed the AG response and he made quite the argument about lacking the senate president signature. Do we know if we will have his cooperation and signature?
- Leckie: Based on my conversation earlier, he would be willing to sign if it is sent
- Little: If we do the first option and wait, if there is anything that is a violation, that issue is carried to fall correct?
- Leckie: Yes
- Little: Then I agree that the second option would be better, but we would present this to the full senate with many leaving after this meeting and I think that may be an issue
- Alvarez: Either way decisions would be made in the fall. My reasoning for leaning towards the second is that if there is anything, the senate can be aware of anything before taking any action on things pertaining to the executive branch.
- Chabot: I tend to lean on the side of waiting since we have a lot of important legislation on the docket. I would hate to see that get delayed by this, especially if the subpoena reveals nothing.
- Little: If anything were to turn up, could we still consider those documents next week even if we aren't meeting?
- Leckie: Theoretically I believe we could meet next week if necessary
- Alvarez: Both the verbiage of the original document and the future documents requires them to produce the documents not present them. Should the documents be produced he would have the right to speak on them if he wishes. It does not mandate him to speak but only for the documentation to be produced.
- Leckie: As long as there is an opportunity to speak on the issue I don't have an issue
- Cusnier: I worry about having this come about tomorrow considering the amount of legislation on the docket. I think that having this being produced on Friday would be best. It would be a disservice to further delay legislation to the student body.
- Alvarez: If we had these turned in by Wednesday and the documents are sufficient for charges, there is nothing statutorily that can be done in one senate meeting. I don't foresee this having a large impact on the Senate on Wednesday.
- Chabot: It seems like we are coming to a decision-making point so I would like to hear from the members what they think the date should be
- Little: I think Wednesday. I agree with Alvarez in that the only time hindrance is if President Levin were to speak on these documents. We owe it to the Senate to be honest with them and transparent. Bringing this info, if any, to the public is what we should strive to do
- Cusnier: After clarification for Senator Alvarez, I think it should be for tomorrow echoing Senator Little. My worry was the number of things we have tomorrow but thank you to senator Alvarez for clearing that up.
- Chabot: I think that we are in agreement for tomorrow by 5.
- Little: Now that we are in agreement, should we now contact Pres. Daraldik with notice for signature?
- Leckie: I know he is in meeting right now but I am in communication and confident that he will respond promptly
- Little: I would like to open it to the entirety of the date in question as we discussed yesterday. I would like to hear from the committee

- o Alvarez: I still think that the original phrasing is best since that would be a longer time frame and more difficult to obtain and go through. If others disagree I am not opposed, but I think there may be other complaints from exec about compliance
- o Little: With that, I am more hesitant to change it. Would it be possible to request documentation from the entirety of the 7th without doing the same for the 8th?
- o Alvarez: As precedent, I think that it would be best to do both. However, it is up to the wording of the subpoena. I think for consistency the request should be the same except for the issues brought by the attorney general
- o Cusnier: Looking at the date it's actually the 8th and the 9th so that needs to be changed
- o Alvarez: thank you!
- o **Alvarez moves to Subpoena** (ATTACHED AT THE END OF THIS DOCUMENT)
- o **Chabot Seconds**
- o **No Objections**
- o **Vote**
    - **Alvarez- Yes**
    - **Chabot- Yes**
    - **Cusnier- Abstain**
    - **Gabriel- Yes**
    - **Little- Yes**
- o **Motion Passes and Subpoena is issued**
- o Alvarez: I want to reiterate what I said yesterday. You all have been great to work with and I hope to work with all in the future.

**Unfinished Business:** X

**Committee Legislative Round Table:** X

**Final Announcements:**
- Leckie: I am proud of you all and its been great working with you all. I think that people are nervous but you all have made good decision
- Chabot: I love you all dearly. Please take care of yourselves and make sure you are hydrated and eating for tomorrow's meeting. I am proud of you all. The Board meets tomorrow. The replies I have gotten direct me to Attorney General Ready so I will contact him shortly. Take care everyone!
- Little: Thank you all! Thursday at 3:30 the survivors' advocacy ad hoc is meeting. You all have been important role models for me with how hectic this summer has been so thank you!

**Date and Time of Next Meeting:** X

*Griffin Leckie*