IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JACK D. DENTON,

       *Plaintiff,*

v.

AMY HECHT, Vice President for
Student Affairs at Florida State
University, in her official and
individual capacities; BRANDON
BOWDEN, Interim Director of the
Department of Student
Government & Advocacy at
Florida State University, in his
official and individual capacities;
AHMAD O. DARALDIK, Former
President of the Student Senate of
Florida State University, in his
individual capacity.

       *Defendants.*

Civil Case No. 4:20-cv-00425-
AW-MAF

**JURY TRIAL DEMANDED**

**PLAINTIFF'S AMENDED VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES[1]**

---

[1] Per the Court's order dated January 28, 2021 (Doc. 68), Plaintiff has revised this Amended Complaint to remove the claims against John E. Thrasher. Plaintiff reserves the right to pursue those claims and the originally-pled factual allegations for purposes of appeal.

Plaintiff Jack D. Denton, by his undersigned attorneys, files this Verified Complaint against Defendants and alleges that:

### INTRODUCTION

1.    Of the freedoms enshrined in the Constitution of the United States, the dyad of free speech and free exercise of religion is at the heart of all the others, because these are the freedoms that our system of representative self-government exists to secure and yet these are the freedoms that make that system possible in the first place. Free government is operationally impossible without the freedom to formulate ideas about the world's most fundamental truths and then communicate those ideas in the hope that good ideas triumph over bad ones in the political process. And an operationally free government is simply undesirable if it does not preserve the right to live according to those ideas outside the political process.

2.    Student governments at public universities are the ultimate ground for experimenting with representative self-government in a diverse society. Students from all walks of life and points of view have the opportunity to work together for the common good of their university community through the political process, all while engaging in the

pursuit of truth that the university is designed to facilitate. Students must live with one another—quite literally—and student government helps them learn to do so in a way that respects the ability to develop different moral and political ideas and speak about them in a political context.

3.     The public university setting also offers practice in participating in the political process while adhering to constitutional constraints. Just as public universities cannot fulfill their academic mission by adopting an orthodoxy and stifling all nonconformist thought, so too student governments at universities cannot achieve their pedagogical purpose of political simulation when they discard constitutional norms. And, like a public university, student governments have constitutional obligations by virtue of their authority delegated from the state.

4.     The Student Senate at Florida State University has failed its pedagogical purpose and breached its constitutional obligations by removing its presiding officer, Jack Denton, in retaliation for his private religious speech.

5.     Mr. Denton is a devout Catholic, and he expressed basic Catholic teachings to other Catholic students in a private group chat. But, because Catholic teachings have implications for some social issues that some consider offensive, those messages were shared, student outrage was fomented, and the Student Senate implemented an *ad hoc* religious test for office: no one with Mr. Denton's beliefs can hold a leadership position in our Student Senate (even if they only talk about those beliefs in private).

6.     The Senate's action harmed Mr. Denton financially and has damaged his reputation permanently.

7.     When Mr. Denton tried to resolve his complaint through internal procedures by appealing to the Student Supreme Court, the Student Senate intentionally prevented the Court from hearing his complaint.

8.     Mr. Denton wrote to Defendant Hecht explaining how the Student Senate had unlawfully removed him and prevented him from seeking redress within the internal student governmental process. University officials refused to correct the Student Senate's clear violation

of Mr. Denton's rights, despite having the authority and the duty to do so.

9.     On October 19, the Student Supreme Court finally heard Mr. Denton's complaint over four months after it was originally filed.

10.     On October 26, the Student Supreme Court found that Mr. Denton's removal violated his rights under federal law and student body statutes and ordered his reinstatement.

11.     At the Student Senate's next meeting on October 28, Defendants Bowden and Daraldik violated the Student Supreme Court's ruling and continued enforcing the Student Senate's removal of Mr. Denton by recognizing Defendant Daraldik, and not Mr. Denton, as the Student Senate President.

12.     To vindicate his constitutional rights, Mr. Denton asks this Court to declare that his removal was unlawful, award damages for his lost compensation, and the modification of all records relating to the Senate's retaliatory and discriminatory actions against him.

## JURISDICTION & VENUE

13.   This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.   This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

15.   This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

16.   Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and N.D. FLA. L. R. 3.1 because Defendants reside in this district and division and all of the acts described in this Complaint occurred in this district and division.

## PLAINTIFF

17.   Jack D. Denton is a resident of North Carolina and a citizen of the United States.

18.     Mr. Denton enrolled as a student at Florida State University ("FSU" or "University") in the summer of 2017.

19.     Mr. Denton is a member of the 72nd FSU Student Senate.

## DEFENDANTS

20.     Defendant Amy Hecht is Vice President for Student Affairs at FSU and is the University president's designated representative in all matters pertaining to student life and governance.[2]

21.     Defendant Hecht oversees the Division of Student Affairs ("the Division"), which includes the Department of Student Government & Advocacy ("the Department").

22.     The Department of Student Government & Advocacy includes the Student Government Association ("SGA").

23.     The Student Senate is the legislative branch of the SGA.

---

[2] Fla. State Univ. Bd. of Trustees Reg. FSU-3.001(1)–(2), *available at* https://regulations.fsu.edu/sites/g/files/upcbnu486/files/regulations/adopted/Chapter%203%20-%20Update%20200213.pdf (accessed Aug. 26, 2020) (establishing student government and requiring the student government to adopt a Student Body Constitution); Florida State University Constitution of the Student Body, Art. IV, Sec. 4(a)("The University President is the ultimate authority in matters of student conduct; discipline and the promulgation of rules, regulations and policies for student governance.") *available at* https://sga.fsu.edu/PDF/CONSTITUTION_OF_THE_STUDENT_BODY.pdf (accessed Aug. 26, 2020).

24.     All SGA legislation is subject to Defendant Hecht's approval prior to implementation.[3]

25.     Defendant Hecht has authority to approve or veto the budget passed by the Student Senate, which includes a line item setting the salary for the Student Senate President.

26.     Defendant Hecht has authority to adjudicate disputes arising from charges of any act by a student organization in violation of laws, rules, regulations, policies or procedures.[4]

27.     Defendant Hecht has authority to hear an appeal of any decision by the Student Supreme Court.[5]

28.     On information and belief, Defendant Hecht has authority to order any SGA official, including members of the Student Senate, to take action consistent with University policy or state and federal law.

29.     Defendant Brandon Bowden is the Interim Director of the Department and is under Defendant Hecht's supervision.

---

[3] *Id.* at FSU-3.001(3).

[4] *Id.* at FSU-3.0015(13).

[5] Fla. State Univ. Student Sup. Ct. R. Proc. 3.8, *available at* https://sga.fsu.edu/docs/Supreme CourtRulesofProcedure.pdf (accessed Aug. 26, 2020).

30.    The Department oversees the SGA to "assist students in reaching their full potential" and provide "students hands-on, experiential, outside of the classroom learning."[6]

31.    The Department sees the SGA as an educational benefit offered by the University because "diversity of thoughts, ideas, and identities bring a richer, more educational dialogue to leadership and the campus community as a whole" and "the limitless opportunities within SGA is a venue [for students] to practice that leadership and hone their skills."[7]

32.    On information and belief, Defendant Bowden has authority to order any SGA official, including members of the Student Senate, to take action consistent with University policy or state and federal law.

33.    Defendant Ahmad Daraldik was appointed President of the Student Senate FSU after the Student Senate removed Mr. Denton.

34.    The Student Senate is part of the SGA.

35.    The SGA is created by Florida state law.[8]

---

[6] Florida State University, *Student Governance & Advocacy: Staff*, SGA.FSU.EDU, *available at* http://sga.fsu.edu/staff.shtml (accessed Aug. 24, 2020).

[7] *Id.*

[8] Fla. Stat. Ann. § 1004.26 ("A student government is created on the main campus of each state university.").

9

36.    The FSU Board of Trustees has followed state law in adopting regulations organizing the FSU SGA and requiring the SGA to "establish and maintain a Student Body Constitution and implementing statutes to facilitate organizational integrity and cohesive administration."[9]

37.    Under the Constitution of the Student Body, the SGA's mission is to "provide FSU students with representation, services and advocacy within the university structure." A true, complete, and accurate copy of the Constitution of the Student Body is attached to this complaint as Exhibit 1.

38.    The purpose of the SGA is "to specifically work for . . . [t]he enforcement of civil rights guarantees in all aspects of university life." Ex. 1 at 2.

39.    SGA rules "shall at no time and in no way abridge the student's rights as a citizen under the United States Constitution or the Constitution of the State of Florida." *Id.* at 2.

40.    Defendant Daraldik was the presiding officer of the Student Senate.

---

[9] *Supra* n. 2.

41.    Defendant Daraldik had authority over all other officers of the Student Senate. When presiding, Defendant Daraldik had the duty to ensure that the Student Senate proceeded according to all applicable law, including the laws of the United States, the laws of the State of Florida, the regulations of the University, and the Student Senate Rules of Procedure.

## FACTUAL ALLEGATIONS

### I.    Mr. Denton engages in religious speech and religiously-motivated service.

#### A. Mr. Denton's beliefs and service

42.    Mr. Denton is a rising senior at FSU.

43.    Mr. Denton is a devout Catholic.

44.    In accordance with his faith, Mr. Denton believes that all human lives are infinitely valuable because all human beings are made in the image of God.

45.    Mr. Denton believes that it is the state's duty to protect all innocent human lives from conception until natural death.

46.    Mr. Denton believes that legal abortion is inconsistent with the state's duty to protect innocent human lives from conception until natural death.

47.     Mr. Denton believes that it is also the state's duty to use its legitimate authority to pursue the common good.

48.     Mr. Denton believes that, because human beings have sinned and broken fellowship with God, the state must use law enforcement in order to fulfil its duties to protect innocent human life and pursue the common good.

49.     Mr. Denton believes that the state's use of law enforcement must be fair, constrained by adequate legal processes, and evenhanded.

50.     Mr. Denton believes that unjustified use of force is a dereliction of the state's duties to protect innocent human life and pursue the common good.

51.     Mr. Denton believes that racially-motivated, unjustified use of force is an especially egregious violation of the state's duties to protect innocent human life and pursue the common good.

52.     Mr. Denton also believes that the contemporary movement to defund the police would, if successful, undermine the state's ability to fulfil its duties of protecting innocent human life and pursue the common good.

53.     Mr. Denton believes that human beings are male and female.

54.    Mr. Denton believes that God created marriage as a gift to humanity and as a permanent, exclusive, and monogamous union between one man and one woman.

55.    Mr. Denton believes that God gave sexual intercourse as a gift to humanity to be enjoyed exclusively within marriage as God designed it.

56.    Mr. Denton believes that honoring God's design for sex and marriage is conducive to human flourishing, while rejecting that design is harmful.

57.    Mr. Denton believes that affirming human gender as male and female consistent with biological sex is conducive to human flourishing, while rejecting biological sex and affirming subjective gender identities is harmful.

58.    Mr. Denton's faith requires and motivates him to serve others.

59.    Because of his interest in government and politics, Mr. Denton was drawn to student government as one avenue for his Christian service.

60.    Mr. Denton ran for, and was elected to, the FSU Student Senate in the fall of 2017.

61.    Mr. Denton served the Student Senate with distinction, building good relationships with his colleagues, including colleagues with different ideas about religion, abortion, law enforcement, marriage, sex, and gender.

62.    Because of Mr. Denton's ability to work well with his colleagues, he was elected by the other Senators as Student Senate President in the fall of 2019.

## B.  Mr. Denton's expression about basic Catholic teaching to other Catholic students

63.    Mr. Denton is a member of the Catholic Student Union.

64.    Members of the Catholic Student Union participate in a group chat over the GroupMe application.

65.    The group chat has various purposes, including sharing event information, making prayer requests, discussing current events, and other topics.

66.    On June 3, 2020, group chat participants discussed recent instances of police violence. A true, accurate, and complete copy of the GroupMe messages relevant to these allegations is attached to this Complaint as Exhibit 2.

67.    One student shared a link to a video on YouTube that raised advertising and donation revenue for several organizations derived in part from each time a person views the video. Ex. 2 at 1–2.

68.    Another student shared a list of the video's beneficiaries. *Id.*

69.    Mr. Denton observed that, "The various funds on that list are fine causes as far as I know, but everyone should be aware that BlackLivesMatter.com, Reclaim the Block, and the ACLU all advocate for things that are explicitly anti-Catholic." *Id.* at 3.

70.    When asked for clarification, Mr. Denton explained, "BlackLivesMatter.com fosters 'a queer-affirming network' and defends transgenderism. The ACLU defends laws protecting abortion facilities and sued states that restrict access to abortion. Reclaim the Block claims less police will make our communities safer and advocates for cutting PDs' budgets. This is a little less explicit, but I think it's contrary to the Church's teaching on the common good." *Id.* at 4.

71.    Mr. Denton offered a final comment, saying, "I don't mean to anger anyone – I know this is a very emotional topic. However, it is important to know what you're supporting when you're Catholic. If I stay silent while my brothers and sisters may be supporting an organization

that promotes grave evils, I have sinned through my silence. I love you all, and I want us all to be aware of the truth. As far as [whether] it's a religious issue or not, there isn't an aspect of our lives that isn't religious, because God wants our whole lives and everything we do to be oriented around him!<3" *Id.* at 13.

72.     The "grave evils" to which Mr. Denton referred are policies that undermine the state's ability to fulfill its duties of protecting innocent human life and pursue the common good or that promote views of sex, marriage, and gender that are harmful to human beings.

73.     Mr. Denton's comments do not state or imply that any human person is a "grave evil."

74.     Mr. Denton's belief that all human beings are made in the image of God prohibits him from regarding any person as a "grave evil" even if a person engages in "grave evils."

75.     Mr. Denton sent his messages for the purpose of avoiding the sin of remaining silent when his fellow Catholics might financially support organizations without knowing all of their policy prescriptions.

76.     Everything Mr. Denton said in his messages is consistent with the teachings of the Roman Catholic Church.

77.     Nothing Mr. Denton said in his messages supported discrimination against other people on any basis.

78.     Nothing Mr. Denton said in his messages suggests that Mr. Denton could not fairly and impartially execute his duties as Student Senate President, especially when construed in light of his actual track record of fairness, collegiality, and coalition-building.

79.     Nothing Mr. Denton said in his messages amounted to or supported harassment or threatening behavior.

## II.     The Student Senate removed Mr. Denton as president because of his speech.

80.     On information and belief, a member of the Latinx/Hispanic Student Union took screenshots of Mr. Denton's messages and shared them with other students, including other student senators the day the statements were made.

81.     The Latinx/Hispanic Student Union is an agency of the SGA.

82.     On information and belief, other students shared screenshots of Mr. Denton's messages over various social media platforms including Twitter, Instagram, Facebook, and Reddit.

83.     During the Student Senate meeting of Wednesday, June 3 (later in the same day that Mr. Denton sent his messages to the Catholic

Student Union group chat), Senator Kundhavi Gnanam made a motion of no-confidence against Mr. Denton pursuant to Student Senate Rule 1.8. A true, accurate, and complete copy of a news story describing the debate during the June 3 meeting is attached to this Complaint as Exhibit 3.

84.    Senator Gnanam stated that she made the motion because she was "offended and scandalized by the rhetoric that Jack Denton used." Ex. 3 at 2.

85.    Senator Gnanam wrongly accused Mr. Denton of describing some people as "grave evil" and said that she made her motion "because people who have described me and my community as 'grave evils' have done it with the intention to not only hurt me emotionally but to hurt me physically." *Id.*

86.    In fact, Mr. Denton did not describe any person or community as "grave evils." *See supra* ¶¶72–74.

87.    Senator Dani Murcia, a self-described "ally of the LGBTQ+ community" expressed her support for the motion and later said that "it was very difficult for me to watch as a religion that was based on loving

others and accepting others was tarnished with hate and discrimination." Ex. 3 at 4.

88.     Senator Sasha Martin said that Mr. Denton should not have even thought it was appropriate to express that the Catholic Church's basic teaching about sex in private to other Catholics, saying: "I am hurt that he thought it was okay to say something homophobic in a Catholic chat thinking it was a 'safe space . . . .'" *Id.*

89.     Senator Gnanam's motion on June 3 received twenty-one votes in favor and sixteen votes against, failing to garner the two-thirds majority necessary to remove Mr. Denton.

90.     After the motion failed, a public campaign immediately ignited to pressure the Student Senate into taking another bite at the apple.

91.     An online petition for Mr. Denton's removal garnered over six thousand signatures between the evening of June 3 and the afternoon of June 5. *Id.* at 3.

92.     As sitting President, Mr. Denton used his discretionary authority to call a special session for the evening of June 5, 2020, in order

to hear public statements from the student body and to allow the Senate to entertain a second motion of no-confidence.

93.   Before the meeting, Senator Martin shared a poster advertising the "Virtual Student Senate Special Meeting" on June 5, that included a rainbow flag and text that said "LGBTQ+ community members are encouraged to wear non-disruptive PRIDE apparel" and "Allies are encouraged to wear white." Senator Martin said, "If you feel comfortable sharing this on your social media platforms I encourage you to do so." A true, complete, and accurate copy of Ms. Martin's message is attached to this Complaint as Exhibit 4.

94.   The Pride Student Union, an agency of the SGA shared a statement on Twitter calling for Mr. Denton's removal. A true, accurate, and complete copy of the Pride Student Union's statement is attached to this Complaint as Exhibit 5.

95.   The Student Senate Pride Caucus (a group of student senators) endorsed this statement in its entirety.

96.   On information and belief, the members of the Student Senate Pride Caucus include Senators Elizabeth Chabot, Quentin England, Brendan Gerdts, Khundavi Gnanam, Alexander Harmon, Gabrielle

Little, Jason Maymon, Sasha Martin, Deia Medley-Neyra, and Pierce Ryan.

97. The Pride Student Union's statement said Mr. Denton's messages were "racist, transphobic, and anti-choice." *Id.* at 2.

98. The statement said that the signatories "condemn these comments" and called for Mr. Denton's removal. *Id.* at 2–3.

99. The statement said that Mr. Denton's statements render him unfit as "[a]s both an officer and an employee of Florida State University" because "LGBTQIA+ students [cannot] know our needs are met and our voices heard, and not sidelined due to the religious beliefs of a governmental body that controls the placement of $13,749,000 of student funds every year?" *Id.* at 3.

100. The statement said that it "is important for us to" use Mr. Denton's statements "as an example of why we must work to hold elected officials accountable" and called for Mr. Denton's removal. *Id.*

101. At the June 5 meeting, Senator Gnanam made a second motion of no-confidence. A true, accurate, and complete recording of the Senate's debate during the June 5 meeting is attached to this Complaint as Exhibit 6.

102.  After Senator Gnanam made her motion, Defendant Daraldik replaced Mr. Denton as the presiding officer of the Student Senate for the remainder of the meeting, as required by Senate rules.

103.  Referring to Mr. Denton's religious speech as the basis for her motion of no-confidence, Senator Gnanam said, "I can think of no more abhorrent thing to hear coming from our Senate Leadership and it is time for us to take action." Ex. 6 at 0:05:41–0:05:46.

104.  Senator Bradley Cusnier said that Mr. Denton should be removed "[d]espite his First Amendment right to free speech" because "what he said was demeaning and hurtful to many members of our student body." *Id.* at 0:07:52–0:08:01.

105.  Senator Cusnier suggested that someone with Mr. Denton's beliefs could not continue as president, saying, "It is necessary that we do what is right to the communities affected and vote Jack Denton out of office. I don't think we will be able to move forward if we don't." *Id.* at 0:08:08–0:08:14.

106.  Senator Griffin Leckie suggested that Mr. Denton's speech revealed beliefs that should not be held by someone in his position, saying, "We're living through a time of incredible social change and, now

more than ever, we need to do something about the issues of our time. So that's why I think we should support this motion [to remove Mr. Denton]." *Id.* at 0:09:01–0:09:12.

107.   Senator Travis Waters said religious speech of the type Mr. Denton made was inappropriate for the Student Senate President: "What was said was a clear violation between separation of church and state, and it hurt many people in the process. It is important for all leaders to be at the tip of the spear driving home diversity and inclusion in all walks of life, and that includes our power-wielding officials who often hold certain privileges at this university. What Denton said should not, and will not, be a representation of who we are. Our leaders are public entities and we must demand the utmost of decorum from them. This is disgraceful." *Id.* at 0:16:49–0:17:18.

108.   Senator Gabrielle Little said that in order to "do right by the LGBTQ+ community" the Senate must "remove President Denton." *Id.* at 0:17:39 –0:17:47.

109.   At the close of debate, Senator Gnanam said that Mr. Denton had to be removed because allowing someone with his religious views to

remain as Student Senate President "would effectively be enabling bigotry." *Id.* at 0:28:51–0:29:00.

110.  No senator offered any grounds for removing Mr. Denton other than his speech in the Catholic Student Union GroupMe chat.

111.  The Student Senate's rules expressly prohibit motions of no-confidence for any purpose that would result in a violation of the Senate Conduct Code.

112.  The Senate Conduct Code requires senators to "comply with the law" and to "conduct him or herself at all times . . . free from discrimination."[10]

113.  The Student Senate President has the authority and the duty to find illegal or improper motions out of order and not allow them to go to the floor for a vote.

114.  Defendant Daraldik has, while serving as Student Senate President, used this authority to find motions out of order and has prevented them from coming to the floor on that basis.

---

[10] The Seventieth Second Student Senate Rules of Procedure, Rule 12.10, *available at* https://sga.fsu.edu/PDF/Senate-Rules-Of-Procedure.pdf (accessed Feb. 10, 2021).

115.  The motions of no-confidence against Mr. Denton were unlawful and discriminatory in violation of applicable law and procedural rules.

116.  Defendant Daraldik had the duty to find those motions out of order while he was presiding over the Senate.

117.  Defendant Daraldik breached his duty and allowed the motions against Mr. Denton to go to the floor for a vote, and enforced the unlawful and improper motion after it carried.

118.  In finding that Mr. Denton should be removed because of his religious speech the Student Senate applied a de facto religious test for office in removing him.

119.  By a vote of thirty-eight in favor, three against, with three abstentions, the Student Senate removed Mr. Denton from the position of Student Senate President because of his speech.

120.  The standard articulated by the motion's proponents and adopted and enforced by the Senate as a whole is that no person who holds the religious views about abortion, law enforcement, marriage, sex, and gender that Mr. Denton holds is qualified to serve in a leadership capacity in the Student Senate.

121.  Mr. Denton's views are consistent with the teachings of the Roman Catholic Church and are also widely-held by FSU students of other faiths or of no faith.

122.  The standard applied by the Student Senate disqualifies a substantial portion of the FSU student body from holding a leadership position within the Student Senate.

123.  The standard applied by the Student Senate renders a substantial portion of the FSU student body incapable of being represented by a leader in the Student Senate who shared their religious and political views.

124.  Defendant Daraldik continued to enforce the Student Senate's actions against Mr. Denton in exercising office and in maintaining the records of Mr. Denton's removal.

125.  Mr. Denton wrote to Defendant Hecht on two occasions, informing her of the Student Senate's actions and asking her to intervene.

126.  On information and belief, Defendant Hecht possesses the authority and obligation as Vice President for Student Affairs to correct the Student Senate's action, but she did not intervene.

127.  On information and belief, Defendant Bowden knew about Mr. Denton's removal and the circumstances surrounding his removal.

128.  On information and belief, Defendant Bowden possesses the authority and obligation as Interim Director of the Department of Student Government & Advocacy to correct the Student Senate's action, but he did not intervene.

## III.  Defendants have harmed Mr. Denton financially, practically, and reputationally.

129.  The Student Senate President receives compensation of $9.00 per hour. The Student Senate President is allowed a maximum of five paid hours per week over the summer, and eight hours per week during the fall semester.

130.  Mr. Denton would have worked the maximum hours allowed per week over the summer, had he continued to serve as Student Senate President.

131.  Mr. Denton lost eight weeks of paid service during the summer, amounting to $360.00 in lost wages.

132.  Mr. Denton would have performed approximately six hours of paid work per week this fall if he continued to serve as Student Senate President.

133.   Mr. Denton was deprived of approximately 19 weeks of wages (from June 5 to October 16) as result of his unlawful removal as Student Senate President.

134.   Defendants' failure to use their authority to correct the Student Senate's removal of Mr. Denton caused Mr. Denton to lose these wages.

135.   The Student Senate's removal of Mr. Denton also deprived him of the opportunity to exercise the authority of the office of the senate presidency during budget allocation in September, 2020.

136.   The Student Senate President has authority to appoint senators to the Budget committee, which holds hearings to allocate the budget from A&S fees.

137.   Presiding over the Student Senate's budget allocation proceedings was one of the primary reasons Mr. Denton ran for the presidency in the first place.

138.   Defendants' failure to use their authority to correct the Student Senate's removal of Mr. Denton cost Mr. Denton the opportunity to preside over the Student Senate's budget allocation proceedings and caused the constitutional and other violations of Mr. Denton's rights.

28

139.   Presidency of the Student Senate is an honor and would have been an important part of Mr. Denton's future job or graduate school applications.

140.   The Student Senate's removal of Mr. Denton imposes a permanent reputational harm on Mr. Denton and reduces his future opportunities.

141.   Defendants' refusal to use their authority to correct the Student Senate's removal of Mr. Denton caused this reputational harm to persist and increase the longer the Student Senate's actions went uncorrected.

142.   On information and belief, the record of Mr. Denton's removal remains, and is maintained by both the Student Senate and the University.

## IV.   The Student Senate and the University deprived Mr. Denton of the ability to seek recourse from the Student Supreme Court.

143.   Mr. Denton has initially to resolve this matter through the internal procedures of the SGA and the University, but Defendants prevented him from doing so.

144. On June 18, 2020, Mr. Denton filed a complaint with the Student Supreme Court alleging that the Senate's removal violated its own procedures, the Student Body Statutes, the Student Body Constitution, and federal law.

145. The Student Supreme Court initially took no notice of Mr. Denton's appeal.

146. At the time of Mr. Denton's appeal, there were several vacancies on the Student Supreme Court.

147. On July 2, 2020, Mr. Denton, through counsel, sent a letter to Defendant Hecht requesting assurance from the Division that temporary justices would be appointed and confirmed to the Student Supreme Court to hear Mr. Denton's complaint or, in the alternative, that Defendant Hecht would hear his appeal under Student Supreme Court Rule 3.8. A true, accurate, and complete copy of the July 2 letter is attached to this complaint as Exhibit 7.

148. Defendant Hecht did not respond to Mr. Denton's July 2 letter.

149. On July 8, the Student Senate met and considered nominations for temporary justices forwarded by the Student Body President.

150. The Student Senate, with Defendant Daraldik presiding, referred the nomination of Abby Salter to Judiciary Committee in violation of Student Body Statutes, which require nominations to go immediately to the floor.

151. The Judiciary Committee held a hearing on July 14 and questioned Ms. Salter. A true, complete, and accurate copy of the minutes of the July 14 Judiciary Committee hearing is attached to this Complaint as Exhibit 8.

152. Senators explicitly vetted Ms. Salter with Mr. Denton's pending complaint to the Student Supreme Court in mind, asking whether she was aware of Mr. Denton's complaint, how Ms. Salter would have ruled as a Justice of the United States Supreme Court in the cases of *Obergefell v. Hodges* and *Bostock v. Clayton County*, and inquiring about her "education . . . in regard to the LGBTQ+ community" and how she planned "to educate" herself "on this community." Ex. 9 at 2–3.

153.  Senator Gnanam expressed dissatisfaction with Ms. Salter's answers to these questions. *Id.* at 5–6.

154.  Senator Gnanam said that Ms. Salter's "limited knowledge [of the LGBTQ+ community] is very concerning and frustrating. *Id.*

155.  Referring to Mr. Denton's complaint, Senator Gnanam opposed Ms. Salter's nomination, saying, "Since there is *such a sensitive case* on the docket it is very concerning what the repercussion of this could be. I don't feel comfortable having her preside over *this case.*" *Id.* (emphasis added).

156.  The Student Senate met for its final meeting over the summer on July 15.

157.  The Student Senate adjourned for the summer without considering Ms. Salter's nomination, rendering the Student Supreme Court incapable of hearing Mr. Denton's complaint.

158.  On July 22, 2020, Mr. Denton sent a second letter through counsel to Defendant Hecht detailing the Student Senate's intentional obstruction of Mr. Denton's complaint to the Student Supreme Court. A true, accurate, and complete copy of the July 22 letter is attached to this Complaint as Exhibit 9.

159.  Mr. Denton asked Defendant Hecht to find that the motion of no-confidence violated SGA rules and federal law, to order his reinstatement and to grant him compensation for lost wages. Ex. 9 at 6.

160.  Mr. Denton explained that the Student Senate's actions violated Student Body Statute § 206.1, which prohibits the SGA, its officers, and its branches from practicing "discrimination," defined as "differential treatment of a student based on . . . religion." *Id.* at 5.

161.  Mr. Denton showed that the Student Senate did treat him differently because of his religious speech, because the Student Senate did not approve a motion of no-confidence against Defendant Daraldik during his term as President, even though Defendant Daraldik made *public* statements on social media that were so distasteful that FSU President Thrasher publicly denounced them as "offensive anti-Semitic rhetoric."[11]

162.  Mr. Denton also showed that the Student Senate's actions violated the SGA Ethics Code, which prohibits similarly discriminatory action. *Id.* at 5–6.

---

[11] John Thrasher, *A message from President John Thrasher: Anti-Semitism and religious discrimination*, Fla. St. Univ. News (June 18, 2020) *available at* https://news.fsu.edu/news /university-news/2020/06/18/a-message-from-president-john-thrasher-anti-semitism-and-religious-discrimination/ (accessed Feb. 10, 2021).

163. Mr. Denton also showed that the Student Senate's actions violated its own procedural rules, because the rule authorizing motions of no-confidence in the Student Senate President prohibit any motion that "would result in violations of the Senate Conduct Code" and the Senate Conduct Code prohibits Student Senators from engaging in discrimination as defined by the Student Body Statutes. *Id.* at 6.

164. On August 4, 2020, the University responded through counsel. A true, accurate, and complete copy of the August 4 letter is attached to this Complaint as Exhibit 10.

165. The August 4 letter claimed that Defendant Hecht could not hear Mr. Denton's complaint, stating that the Division would take no action on his matter, and that Mr. Denton could hold to nothing but the "hope that the currently vacant Supreme Court seats will be filled at the conclusion of the first Student Senate meeting of the fall so that Mr. Denton's complaint can be heard immediately." Ex. 10 at 1.

166. Defendant Hecht took no action even though the Student Senate's acts violated University policy (in addition to the SGA rules Mr. Denton raised in his complaint to the Student Supreme Court and his appeal to the Division), which states, "Florida State University is

34

committed to a policy of non-discrimination on the basis of . . . creed, . . . religion . . . or any other legally protected group status. This policy applies to employees [and] students . . . ."[12]

167. Defendant Hecht sent a letter to the Student Senate on August 7, 2020. A true, accurate, and complete copy of the August 7 letter is attached to this Complaint as Exhibit 11.

168. Defendant Hecht stated, "I believe the no-confidence vote taken against Mr. Denton resulting in his removal as Student Senate President on June 5 followed proper procedure according to Senate Rule 1.8 . . . ." Ex. 11 at 2.

169. Defendant Hecht nominally refrained from commenting on the substance of the arguments Mr. Denton raised in his appeals. *Id.*

170. In doing so, Defendant Hecht ratified the Student Senate's removal of Mr. Denton as president.

171. Defendant Hecht did not explain why she rejected Mr. Denton's claim that the motion of no-confidence violated the Rule's

---

[12] Fla. State Univ. Bd. of Trustees Regulation FSU-6.014, *available at* https://regulations.fsu.edu/sites/g/files/upcbnu486/files/regulations/adopted/FSU-Chapter-6-20180717.pdf (accessed Aug. 26, 2020).

prohibition of motions for discriminatory purposes in violation of the Senate Conduct Code.

172. Defendant Hecht did not explain why the motion of no-confidence was consistent with the University's anti-discrimination policy. *See supra* ¶167.

173. Defendant Hecht stated that Mr. Denton's complaint "lies clearly in the purview of the judicial branch, but that branch doesn't exist because of the inaction of the Student Senate." Ex. 11 at 2.

174. Defendant Hecht expressed her hope that the Student Senate "will take immediate action at the start of the Fall semester and seat the judicial branch of the student government." *Id.* at 3.

175. However, as Defendant Hecht knew or should have known at the time, even if new justices were appointed immediately, it was unlikely that they could have been sworn in soon enough to hear Mr. Denton's complaint and render a decision in time to give Mr. Denton effective relief.

176. The actions of the Student Senate and the University prevented Mr. Denton from seeking timely redress for the Senate's

retaliation against him through the Student Supreme Court and the Division.

177. Defendants were informed of the unlawful actions of the Student Senate and had authority at their disposal and the obligation to correct those actions but refused to do so.

## V. Defendants continued to enforce the Student Senate's removal of Mr. Denton even after this Court and the Student Supreme Court found his removal was unconstitutional.

### A. The Student Supreme Court reconvenes after this Court ruled on Mr. Denton's motion for preliminary injunction

178. Mr. Denton filed his Verified Complaint with this Court on August 31, 2020. Shortly thereafter, Mr. Denton filed a motion for preliminary injunction, which this Court granted in part on October 8, 2020.

179. In the Court's opinion, the Court found that Mr. "Denton easily makes [the] showing" that he has a substantial likelihood of prevailing on the merits of his claims, and "enjoined [Defendants] from continuing to enforce or give effect to the vote to remove Jack Denton to the extent that doing so means denying prospective payment for services as student senate president." Doc. 55, Order Granting in Part Motion for Preliminary Injunction, 15, 24.

180. The Court denied Mr. Denton's request for reinstatement on the motion for preliminary injunction.

181. After this Court ruled, the Student Senate finally confirmed enough justices for the Student Supreme Court to hear Mr. Denton's complaint that was filed before he filed his Verified Complaint with this Court.

182. Mr. Denton brought his complaint at the Student Supreme Court against Defendant Daraldik and Senator Gnanam.

183. On October 14, 2020, Mr. Denton filed an addendum with the Student Supreme Court to give notice of this Court's ruling.

184. The Student Supreme Court scheduled a hearing on Mr. Denton's case to be held on October 19, 2020.

**B. The University interferes in the Student Supreme Court's consideration of Mr. Denton's complaint**

185. On October 9, 2020, Defendant Bowden spoke to the Chief Justice of the Student Supreme Court, Julie-Anna Ducey, about Mr. Denton's pending complaint.

186. Ms. Ducey is a second-year student at Florida State University College of Law ("FSU Law").

187.  Defendant Bowden suggested that he and Ms. Ducey have a videoconference with the University's general counsel, Carolyn Egan.

188.  On October 16, 2020, Defendant Bowden, Ms. Ducey, and Ms. Egan spoke about Mr. Denton's case over videoconference.

189.  During that videoconference, Ms. Egan explained to Ms. Ducey that she had spoken with FSU Law professor Nat Stern (one of Ms. Ducey's professors during her first year at FSU Law).

190.  Ms. Egan suggested (on Professor Stern's recommendation) that the Student Supreme Court should find against Mr. Denton on the grounds that his speech was not protected under the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

191.  Ms. Egan also suggested that, instead of reinstating Mr. Denton, the Court could remove Mr. Daraldik if it found that his acts were unlawful and replace him with Senator Harmon as the new president rather than Mr. Denton.

192.  Ms. Ducey was uncomfortable with the University's general counsel consulting one of her law professors, suggesting how she should rule on Mr. Denton's complaint, and giving specific legal authority that she should use in doing so.

193. Minutes before the October 19 hearing on Mr. Denton's complaint, Kyle Griffs, associate University general counsel, entered the conference room where the Student Supreme Court justices were preparing for the hearing.

194. Mr. Griffs instructed the Student Supreme Court justices not to state publicly that they would deliberate after the hearing. Mr. Griffs instructed the justices to say only that they would issue a written opinion.

195. Mr. Griffs asked whether the justices wanted to discuss any other matters with him before the hearing.

196. On October 19, the Student Supreme Court held a hearing on Mr. Denton's complaint, after the University's counsel suggested how it should rule, gave authority to support its suggestion, and instructed the Student Supreme Court not to publicly announce that it would deliberate.

197. Defendant Daraldik answered Mr. Denton's complaint and appeared at the hearing.

198. Senator Gnanam refused to answer the complaint, did not appear at the hearing, and did not designate a party representative to appear at the hearing on her behalf.

199. On October 26, 2020, the Student Supreme Court issued an opinion finding that the Student Senate's removal of Mr. Denton violated his rights under the First Amendment and Student Body Statues. A true, complete, and accurate copy of the Student Supreme Court's opinion is attached to this complaint as Exhibit 12.

200. The Student Supreme Court ordered Defendant Daraldik to reinstate Mr. Denton as Student Senate President. Ex. 12 at 19.

201. On October 26, Defendant Daraldik appealed the Student Supreme Court's ruling to Defendant Hecht.

**C. Defendants continued to enforce the Student Senate's removal of Mr. Denton after this Court and the Student Supreme Court found that it was unconstitutional.**

202. On October 20, 2020, Ms. Ducey notified Defendant Bowden that the Student Supreme Court was likely to order Mr. Denton's reinstatement.

203. During their October 20 conversation, Defendant Bowden reiterated Ms. Egan's suggestion that they should not reinstate Mr. Denton in any event.

204. Ms. Ducey responded that they would not remove Defendant Daraldik and elevate Senator Harmon, as Ms. Egan suggested, and Defendant Bowden did not press the issue further.

41

205. After the Student Supreme Court issued its opinion ordering Mr. Denton's reinstatement on October 26, Defendant Bowden asked Ms. Ducey whether the reinstatement was effective immediately. A true, complete, and accurate copy of the text conversation between Defendant Bowden and Ms. Ducey is attached to this complaint as Exhibit 13.

206. Ms. Ducey responded that the decision is effective immediately, although Defendant Daraldik has the opportunity to appeal to Defendant Hecht within 24 hours. Ex. 13 at 6.

207. Several hours later, Defendant Bowden asked Ms. Ducey again whether the reinstatement was effective immediately. *Id.* at 7.

208. Ms. Ducey explained again that the reinstatement "does take effect immediately though, even pending the appeal [to Dr. Hecht]. Otherwise, Denton would not have been removed until we heard the case [either]." *Id.*

209. Defendant Bowden replied, "Got it, will share." *Id.*

210. On October 28, 2020, the Student Senate reconvened for the first time after Mr. Denton's reinstatement.

211. Defendant Daraldik refused to reinstate Mr. Denton, and asserted that he was still Student Senate President.

42

212.  Defendant Bowden agreed that Defendant Daraldik was still the Student Senate President and continued to enforce the Student Senate's removal of Mr. Denton.

213.  Defendant Daraldik invoked a procedural rule to allow Mr. Denton to assume the chair and preside over the meeting, while maintaining that Defendant Daraldik was the Student Senate President.[13]

214. Mr. Denton objected to both Defendant Daraldik and Defendant Bowden, but Defendant Bowden sided with Defendant Daraldik.

215.  Defendant Hecht attended the meeting and did not overrule Defendant Bowden or Defendant Daraldik and therefore recognized Daraldik as President.

216. During the meeting, many students and some student senators spoke during the time allotted for public comment.

217. Some students and student senators used profanity and personal attacks, in violation of the Student Senate's rules.

---

[13] *See supra* n.10 at Rule 2.2 ("the president shall have the authority to appoint any senator to assume the chair temporarily, and preside over the Senate").

218.  Defendants Bowden and Hecht had the authority and the duty to prohibit or stop the profanity and personal attacks and did not do so.

219.  Ms. Ducey texted Defendant Bowden during the meeting to identify the ongoing violations and to ask him to enforce the rules. *Id.* at 9.

220.  Defendant Bowden said, "I will share with GC and DaShaun since I can't participate tonight." *Id.*

221.  Defendant Bowden asked whether Mr. Denton could enforce the rules himself. *Id.*

222.  Ms. Ducey explained, "He can call any comment out of order but likely won't because he's the one being attacked. I don't think he's supposed to be the one to tell them to stop when they are speaking against him." *Id.* at 10.

223.  Indeed, Mr. Denton did not enforce the rules because he was the subject of the comments and he knew that others on the call, including Defendants Bowden and Hecht, had the authority to enforce the rules.

224. Defendant Bowden asked Ms. Ducey, "But should it go straight to the advisor to interject? Would this typically be for the Pro Temp or the Parliamentarian?" *Id.* at 10.

225. Ms. Ducey responded, "The parliamentarian or pro temp could also call it out but the advisor can at any time enforce a rule." *Id.* at 10.

226. Defendants Bowden and Hecht had the authority and the duty to correct the continued violations but refused to do so.

227. Defendants Bowden and Hecht breached their duty to correct the ongoing violations.

228. Defendants Bowden and Daraldik have not corrected or retracted their claim that Defendant Daraldik was the Student Senate President and Mr. Denton was not the Student Senate President even after the Student Supreme Court ordered Mr. Denton's reinstatement.

229. On November 4, 2020, the Student Senate met again. Defendant Daraldik did not attend the meeting and Mr. Denton presided over the meeting.

230.  Defendant Bowden participated in the November 4 meeting but did not correct or retract the assertion from the previous meeting that Defendant Daraldik is the Student Senate President.

231.  Defendant Hecht attended the November 4 meeting but did not correct or overrule the assertion from the previous meeting that Defendant Daraldik is the Student Senate President.

232.  Defendant Daraldik's appeal to Defendant Hecht was pending at the time of the November 4 meeting.

233.  On information and belief, Defendant Hecht has had notice that the Student Supreme Court was likely to reinstate Mr. Denton since October 20, 2020, and has had knowledge of the actual reinstatement since October 26.

234.  Defendant Hecht has been aware of Mr. Denton's complaint since July 2, 2020.

235.  Defendant Hecht is aware that Defendants Bowden and Daraldik have defied the Student Supreme Court's order reinstating Mr. Denton.

236.  Defendant Hecht refused to rule on Mr. Daraldik's appeal until it was mooted by the expiration of Mr. Denton's rightful term.

237. By intentionally refusing to rule on the appeal, Defendant Hecht gave effect to the claim by Defendants Bowden and Daraldik that Defendant Daraldik was the rightful Student Senate President despite the Student Supreme Court's ruling.

238. Defendants Hecht, Bowden, and Daraldik continued to inflict reputational injury on Mr. Denton even though this Court has already found that his original removal was unconstitutional and after the Student Supreme Court ordered his reinstatement by obstructing his reinstatement and preventing him from vindicating his rights before the expiration of his rightful term.

239. Defendants Hecht, Bowden, and Daraldik have knowledge that Mr. Denton's removal as president of the Student Senate on June 5, 2020, violated his constitutional rights.

240. Defendants Hecht, Bowden, and Daraldik have knowledge that taking any additional action to enforce Mr. Denton's removal as president of the Student Senate violates Mr. Denton's constitutional rights and contravenes this Court's Order Granting in Part Motion for Preliminary Injunction.

241.   On November 9, the Student Supreme Court suspended Defendant Daraldik from serving in the Student Senate for the remainder of the 2020-21 academic year and barred him from all SGA offices for offenses separate from those alleged in this Complaint.[14]

242.   By November 9, Defendants Bowden Hecht had not started paying Mr. Denton his salary as Student Senate President, as ordered by this Court on October 8.

243.   Mr. Denton posted the bond required by this Court's order on Friday, October 16. Doc. No. 57.

244.   The Student Senate President normally receives compensation every other Friday.

245.   After five Fridays had passed since the day Mr. Denton posted his bond (including Friday, October 16) and three Fridays had passed since the Student Supreme Court ordered Mr. Denton's reinstatement as Student Senate President, Mr. Denton still had not received any payment as Senate President.

246.   During the same time period, Defendants had not given Mr. Denton access to the Student Senate President email account.

---

[14] *See See Ready v. Daraldik*, No. 2020-CA-4 (Nov. 9, 2020) *available at* http://sga.fsu.edu/Reporter/2020-CA-4-Ready-v-Daraldik.pdf (accessed Nov. 10, 2020).

247. Defendants' failure to give Mr. Denton access to the email account (access to which he was entitled as Student Senate President) made it more difficult for him to carry out the duties of his office because other senators use the Student Senate President email address to conduct business with the president.

248. Mr. Denton filed a motion to amend his Complaint to address Defendants' additional unlawful acts described in ¶¶185–247 on November 18, 2020 (Doc. 60).

249. The University Defendants paid Mr. Denton $390.00 by direct deposit on November 24, 2020, six days after he filed his motion to amend the Complaint and thirty-nine days after he posted his bond.

250. The University Defendants have not compensated Mr. Denton for the wages he lost in the summer and fall before the Court entered the preliminary injunction.

251. Defendants Bowden and Hecht never granted Mr. Denton access to the Student Senate President's email at any time during the remainder of his term, as they or their employees did when Mr. Denton was initially elected president.

252. All Defendants continued to violate Mr. Denton's constitutional rights, with knowledge, by refusing to recognize Mr. Denton as president of the Student Senate by failing to pay him as ordered by the Court until Mr. Denton filed a motion to amend his complaint, and by refusing to grant him access to the Student Senate President email account.

## ALLEGATIONS OF LAW

253. At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the State of Florida (*i.e.*, under color of state law and authority).

254. Defendants knew or should have known that they were violating Mr. Denton's constitutional rights by subjecting him to adverse actions, including but not limited to removing him from the position of Student Senate President because of his protected speech to other students in a private group chat.

255. Defendants knew or should have known that they were violating Mr. Denton's constitutional rights by refusing to reverse the

Student Senate's unlawful action, and by allowing the consequences of that unlawful action to continue and compound.

256. Defendants knew or should have known that they were violating Mr. Denton's rights by continuing to enforce the Student Senate's removal of Mr. Denton even after this Court found that it was unconstitutional and after the Student Supreme Court ordered Mr. Denton's reinstatement.

257. The decisions that led to the violation of Mr. Denton's constitutional rights remain in full force and effect.

258. Defendants have authority and the obligation to remedy those violations but refuse to do so.

259. Mr. Denton has suffered and is suffering irreparable harm from Defendants' retaliatory and discriminatory decisions challenged here.

260. Mr. Denton has no adequate or speedy remedy at law to correct the deprivation of his rights by Defendants.

261. Defendants' actions, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

262.  Unless the decisions of Defendants are enjoined, Mr. Denton will continue to suffer irreparable injury.

263.  Under 42 U.S.C. §§ 1983 and 1988, Mr. Denton is entitled to appropriate relief invalidating Defendants' challenged decisions.

### FIRST CAUSE OF ACTION
### Violation of Plaintiff's Right to Freedom of Speech under the First Amendment – Retaliation
### (42 U.S.C. § 1983)

264.  Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–271 of this Complaint.

265.  The First Amendment rights of free speech and expression extend to campuses of state universities.

266.  The First Amendment prohibits the government from retaliating against citizens for their constitutionally-protected speech.

267.  The First Amendment prohibits actions by the government that deter a person of ordinary firmness from engaging in their preferred speech or expressive activity.

268.  The First Amendment applies the constitutional prohibition on religious tests for office to the states, nullifying any interest a student government might have in regulating its officers' religious speech.

269.  Mr. Denton's speech to the other members of the Catholic Student Union was pure speech protected by the First Amendment.

270.  Mr. Denton was removed from his position as Student Senate President in retaliation for his private speech to other members of the Catholic Student Union in a private group chat.

271.  Mr. Denton's private speech was the sole reason for the Student Senate's adverse action against him.

272.  Mr. Denton's speech in the Catholic Student Union Group chat was not made in his capacity as Student Senate President.

273.  The Student Senate's removal of Mr. Denton did not further any governmental interest.

274.  The Student Senate's removal of Mr. Denton retaliated against him for his past speech and deters him from engaging in his preferred speech in the future.

275.  Therefore, the Student Senate's removal of Mr. Denton from the position of Student Senate President was unconstitutional retaliation against Mr. Denton in violation of his First Amendment rights.

276.  The Student Senate, with acquiescence from all of the Defendants, unconstitutionally removed Mr. Denton from a position

within the SGA—an organization maintained by the University pursuant to state law and for the purpose of providing an educational benefit.

277.  Mr. Denton informed the Division about the Student Senate's acts in violation of Mr. Denton's constitutional rights, student body rules, and University regulations.

278.  Defendant Hecht possesses the authority and the obligation to remedy the Student Senate's unlawful acts and has explicitly refused to do so.

279.  Defendant Bowden knew or should have known about the Student Senate's unlawful acts and possesses the authority and the obligation to remedy those unlawful acts but has not done so.

280.  Defendants Hecht, Bowden, and Daraldik continued to enforce the Student Senate's removal of Mr. Denton, even after this Court found that it was unconstitutional and the Student Supreme Court ordered Mr. Denton's reinstatement.

281.  Defendants have violated Mr. Denton's right to free speech under the First Amendment.

## SECOND CAUSE OF ACTION
## Violation of Plaintiff's Right to Freedom of Speech under the First Amendment – Content & Viewpoint Discrimination (42 U.S.C. § 1983)

282. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–271 of this Complaint.

283. The First Amendment prohibits the government from regulating speech on the basis of its content unless the regulation is narrowly tailored to serve a compelling governmental interest.

284. The First Amendment prohibits the government from regulating speech on the basis of its viewpoint entirely.

285. Defendants evaluated the content and viewpoint of Mr. Denton's speech to determine whether they would remove him as Student Senate President based on what he said.

286. Defendants retain unbridled discretion to discriminate based on content or viewpoint.

287. Defendants exercised unbridled discretion when they retaliated against Mr. Denton for expressing his views about basic Catholic teaching in private.

288.  Defendant Hecht confirmed the Student Senate's unbridled discretion by saying that the motion of no-confidence complied with Student Senate Rule 1.8.

289.  Defendants' action in removing Mr. Denton from the position of Student Senate President serves no legitimate, let alone compelling, governmental interest.

290.  Defendants' action in removing Mr. Denton from this position of Student Senate President is not narrowly tailored to achieve any governmental interest.

291.  Therefore, Defendants' removal of Mr. Denton because of his speech was an unconstitutional restriction of his speech on the basis of its content and viewpoint.

292.  The Student Senate, with the participation and/or approval of all of the Defendants, unconstitutionally removed Mr. Denton from a position within the SGA—an organization maintained by the University pursuant to state law and for the purpose of providing an educational benefit.

293.   Mr. Denton informed the Division about the Student Senate's acts in violation of Mr. Denton's constitutional rights, student body rules, and University regulations.

294.   Defendant Hecht possesses authority and the obligation to remedy the Student Senate's unlawful acts and has explicitly refused to do so.

295.   Defendant Bowden knew or should have known about the Student Senate's unlawful acts and possesses the authority and the obligation to remedy those unlawful acts but has not done so.

296.   Defendants Hecht, Bowden, and Daraldik continued to enforce the Student Senate's removal of Mr. Denton, even after this Court found that it was unconstitutional and the Student Supreme Court ordered Mr. Denton's reinstatement.

297.   Defendants have violated Mr. Denton's right to free speech under the First Amendment.

### THIRD CAUSE OF ACTION
### Violation of Plaintiff's Right to Free Exercise of Religion Under the First Amendment – Hostility
### (42 U.S.C. § 1983)

298.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–271 of this Complaint.

299.  The First Amendment protects the right to free exercise of religion.

300.  The Free Exercise Clause prohibits the government from adopting policies or enforcing them out of hostility towards a particular religious viewpoint.

301.  The Student Senate targeted Mr. Denton for removal because of his religious views.

302.  The proponent of both motions of no-confidence, Senator Gnanam, expressed her hostility toward Mr. Denton's religious beliefs by saying "I can think of no more abhorrent thing to hear coming from our Senate Leadership and it is time for us to take action."

303.  Senator Gnanam also compared Mr. Denton's views to those of others that have engaged in physical violence, even though Mr. Denton never supported harassment or violence and repeatedly disclaimed such actions.

304.  Other Senators acquiesced in Senator Gnanam's assessment and offered similar expressions of hostility to Mr. Denton's views.

305. The Student Senate discriminated against Mr. Denton and removed him from the position of Student Senate President on account of the members' hostility toward Mr. Denton's religious beliefs.

306. Therefore, the Student Senate's decision to remove Mr. Denton as Student Senate President violated his right to free exercise of religion under the First Amendment.

307. The Student Senate, with the participation and/or approval of all the Defendants, unconstitutionally removed Mr. Denton from a position within the SGA—an organization maintained by the University pursuant to state law and for the purpose of providing an educational benefit.

308. Mr. Denton informed the Division about the Student Senate's acts in violation of Mr. Denton's constitutional rights, student body rules, and University regulations.

309. Defendant Hecht possesses the authority and the obligation to remedy the Student Senate's unlawful acts and has explicitly refused to do so.

310. Defendant Bowden knew or should have known about the Student Senate's unlawful acts and possesses the authority and the obligation to remedy those unlawful acts but has not done so.

311. Defendants Hecht, Bowden, and Daraldik continued to enforce the Student Senate's removal of Mr. Denton, even after this Court found that it was unconstitutional and the Student Supreme Court ordered Mr. Denton's reinstatement.

312. Defendants have violated Mr. Denton's right to free exercise of religion under the First Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants and to provide the following relief:

A. A declaratory judgment that Defendants' retaliatory actions against Mr. Denton in removing him from the position of Student Senate President and continuing to enforce the removal, violated his rights under the First and Fourteenth Amendments;

B. A permanent injunction ordering Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf: to ensure that all

records at the University, in the Journal of the Student Senate, or within the control of Defendants that refer or relate to Mr. Denton's removal on June 5, 2020 include a statement recognizing that Mr. Denton's removal violated his constitutional rights and is null and void.

C. Nominal and compensatory damages for the violation of Mr. Denton's First and Fourteenth Amendment rights;

D. Mr. Denton's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

E. All other relief to which Mr. Denton may be entitled.

Respectfully submitted on the 11th day of February, 2021.

Mark Welton
Florida Bar No. 999202
**WELTON LAW FIRM, LLC**
1020 S. Ferdon Blvd.
Crestview, FL 32536
Telephone:  (850) 682-2120
Facsimile:   (850) 689-0706
mark@weltonlawfirm.com

*s/ Tyson Langhofer*
Tyson Langhofer*
**ALLIANCE DEFENDING FREEDOM**
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
Telephone:  (571) 707-4655
Facsimile:   (571) 707-4656
tlanghofer@ADFlegal.org

David A. Cortman
FLORIDA BAR NO. 18433
Travis C. Barham*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE,
Ste. D-1100
Lawrenceville, GA 30043
Telephone:  (770) 339-0774
Facsimile:   (770) 339-6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

*Admitted pro hac vice

*Attorneys for Plaintiff*

**Verification**

Pursuant to 28 U.S.C. § 1746, I, Jack D. Denton, declare under penalty of perjury, that I have personal knowledge of the matters contained in paragraphs 17–252 of this Amended Complaint and that the allegations contained therein are true and accurate.

Executed this 11th day of February, 2021.

Jack D. Denton