IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| JACK D. DENTON, | |
| *Plaintiff,* | |
| v. | |
| | Civil Case No 4:20-cv-00425-AW-MAF |
| AMY HECHT, Vice President for Student Affairs at Florida State University, in her official and individual capacities; BRANDON BOWDEN, Interim Director of the Department of Student Government & Advocacy at Florida State University, in his official and individual capacities; AHMAD O. DARALDIK, Former President of the Student Senate of Florida State University, in his individual capacity. | |
| *Defendant(s).* | |

**PLAINTIFF'S RESPONSE TO DEFENDANT DARALDIK'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ................................................................... iii

INTRODUCTION ........................................................................ 1

MOTION TO DISMISS STANDARD ........................................ 2

ARGUMENT ................................................................................ 3

  I.  The Amended Complaint sufficiently alleges that Daraldik's
actions were state action. ........................................................ 3

    A.   The Amended Complaint alleges specific acts Daraldik
undertook as a state actor. .................................................. 3

    B.   The Amended Complaint alleges facts to show that
Daraldik's actions were state action. ................................... 7

  II.   The Amended Complaint sufficiently alleges facts to state
a claim against Daraldik. ....................................................... 10

  III.  Daraldik is not entitled to qualified immunity. ............................ 12

    A.   Denton alleges that Daraldik's acts presiding over,
furthering, and enforcing Denton's removal violated clearly
established law. ..................................................................... 13

    B.   Denton alleges that Daraldik's acts after this Court
preliminarily enjoined University officials violated clearly
established law. ..................................................................... 16

CONCLUSION ............................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Alabama Student Party v. Student Government Association of the University of Alabama,*
 867 F.2d 1344 (11th Cir. 1989) ........................................................ 7, 14

*Bell Atlantic Corporation v. Twombly,*
 550 U.S. 544 (2007) ................................................................... 2, 3, 12

*Bennett v. Hendrix,*
 423 F.3d 1247 (11th Cir. 2005) ............................................................ 13

*Bond v. Floyd,*
 385 U.S. 116 (1966) ......................................................................... 10

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
 508 U.S. 520 (1993) ......................................................................... 14

*Dharod v. Los Angeles City College,*
 2011 WL 3555622 (C.D. Cal. June 7, 2011) ....................................... 7, 8

*Edwards v. Prime Inc.,*
 602 F.3d 1276 (11th Cir. 2010) ......................................................... 2, 3

*Flint v. Dennison,*
 488 F.3d 816 (9th Cir. 2007) ................................................................ 7

*Florida A & M University Board of Trustees v. Bruno,*
 198 So.3d 1040 (Fla Dist. Ct. App. 2016) ............................................. 10

*Gay & Lesbian Students Association v. Gohn,*
 850 F.2d 361 (8th Cir. 1988) ............................................................ 7, 8

*Harlow v. Fitzgerald,*
 457 U.S. 800 (1982) ..................................................................... 3, 12

*Holloman v. Harland,*
 370 F.3d 1252 (11th Cir. 2004) ............................................................ 13

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ................................................................. 13

*Husain v. Springer,*
    494 F.3d 108 (2d Cir. 2007) ................................................. 8, 9

*Keating v. City of Miami,*
    598 F.3d 753 (11th Cir. 2010) ............................................... 13

*Koala v. Khosla,*
    931 F.3d 887 (9th Cir. 2019) ................................................ 7, 9

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) ........................................................... 14

*Powell v. McCormack,*
    395 U.S. 486 (1969) .................................................................. 9

*Rosenberger v. Rector and Visitors of University of Virginia,*
    515 U.S. 819 (1995) ............................................................... 14

*Shephard v. Davis,*
    300 F. App'x 832 (11th Cir. 2008) ........................................ 13

*Siddique v. Lailiberte,*
    972 F.3d 898 (7th Cir. 2020) ................................................. 15

*Watts v. Florida International University,*
    95 F.3d 1289 (11th Cir. 2007) ........................................... 2, 12

*Wilson v. Houston Community College System,*
    955 F.3d 490 (5th Cir. 2020) ................................................ 14

*Zatler v. Wainwright,*
    802 F.2d 397 (11th Cir. 1986) ...................................... 4, 6, 12

**Statute**

Fla. Stat. § 1004.26(1) ............................................................ 7, 9

iv

## INTRODUCTION

The Student Senate of Florida State University ("the University" or "FSU") removed Jack Denton from his position as Student Senate President in retaliation for his constitutionally-protected speech. Defendant Ahmad Daraldik presided over Denton's removal and brought the motion to remove Denton to the floor for a vote, breaching his duty to find that the motion was out of order because it violated Student Senate rules and the Constitution of the United States.

This Court held that Denton was likely to succeed on his free speech retaliation claim since "Denton's removal was because of his speech" and "those participating in the political process do not forfeit their First Amendment freedoms." Doc. 55 at 15–16. Denton subsequently won an order of reinstatement to his position from the FSU Student Supreme Court. *See* Doc. 59-1 at 19. Defying the holdings of this Court and the Student Supreme Court, Daraldik took additional acts enforcing the Student Senate's original, unconstitutional removal of Denton. *See* Amended Complaint, Doc. 69 at ¶¶210–215, 228. Denton filed an Amended Complaint detailing these additional violations. *See id.*

Daraldik filed a motion to dismiss the Amended Complaint urging that Denton has failed to allege enough facts to show that Daraldik was a state actor and that he was responsible for the unconstitutional acts. But Daraldik relies on inapposite, out-of-circuit caselaw and fails to mention this Court's opinion finding that the Student Senate is a state

1

actor. *Compare* Doc. 55 at 9–10 (finding state action by the student government and the administration) *with* Doc. 75 at 3–5 (claiming no state action by Daraldik without addressing the Court's opinion). Daraldik also contends that he is entitled to qualified immunity. But his unlawful acts enforcing Denton's removal occurred *after* this Court had already found that Denton was likely to succeed on his claim that the removal was unconstitutional. In other words, Daraldik claims he violated no "clearly established" law when he enforced the same unconstitutional act that this Court already had enjoined the University from enforcing.

Denton alleges enough facts that, taken as true, establish Daraldik's liability. Therefore, the Court should deny Defendant's motion.

## <u>MOTION TO DISMISS STANDARD</u>

On a motion to dismiss, this Court must take the "factual allegations in the complaint as true and construe them in the light most favorable to [Denton]." *Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The Court must construe the Amended Complaint "broadly," because a complaint is sufficient when it contains "'enough factual matter . . . to suggest' the required element." *Watts v. Fla. Int'l Univ.* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Court may only dismiss the Amended Complaint if "the facts as pled do not state a claim for relief that is plausible on its face." *Edwards*, 602 F.3d at 1291 (citations omitted). "Plausible" means "plausible grounds to infer," not a "probability requirement." *Twombly*, 550 U.S. at 556. A complaint need only allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of" liability. *Id.* Denton's Amended Complaint easily satisfies this standard.

## ARGUMENT

The Amended Complaint alleges sufficient facts to show that Daraldik was a state actor and that he personally violated Denton's rights. In addition, Daraldik is not entitled to qualified immunity because the rights he violated were "clearly established" at the time he violated them. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## I. The Amended Complaint sufficiently alleges that Daraldik's actions were state action.

Daraldik contends that the Amended Complaint fails to allege state action by Daraldik. *See* Doc. 75 at 3–5. That argument ignores Denton's allegations, relies on out-of-circuit precedent, ignores Eleventh Circuit precedent, and fails to engage this Court's opinion that addressed the state action issue.

### A. The Amended Complaint alleges specific acts Daraldik undertook as a state actor.

Daraldik claims that "Plaintiff's Complaint seeks to impose § 1983 liability on Daraldik not due to any affirmative acts he individually took

3

. . . but, rather, for the sole fact that this individual is a figure-head of the Student Senate . . . ." Doc. 75 at 3.

Not so. Denton's claims against Daraldik all arise from Daraldik's personal acts in violation of his legal duties. Denton's allegations satisfy the standard for liability under § 1983, which "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Id.* All of Denton's claims against Daraldik are for acts which Daraldik directly committed and in which he "was personally involved." *Id.*

Denton identified many specific acts that Daraldik undertook before this Court granted in part Denton's motion for preliminary injunction. In particular, Denton alleges the following:

- When Daraldik presided over the Student Senate, he had a duty to find unlawful or improper motions out of order and not allow them to go to the floor. Doc. 69 at ¶¶41, 113.

- Daraldik had used that power to find motions out of order on other occasions. *Id.* at ¶114.

- Daraldik had a duty to find the discriminatory motion of no-confidence against Denton out of order and that he breached this duty. *Id.* at ¶¶116–117.

4

- Daraldik enforced a de facto religious test for office in the Student Senate against Denton. *Id.* at ¶¶117–18.

- Daraldik acted unlawfully by continuing to exercise the office of Student Senate President and maintaining records relating to Denton's unconstitutional removal. *Id.* at ¶124.

- Daraldik unlawfully obstructed the confirmation of justices to prevent Denton from appealing his unconstitutional removal by referring nominations to the Student Senate Judiciary Committee in breach of Student Body Statutes. *Id.* at ¶150.

Denton also alleges that all Defendants took additional unlawful acts to enforce Denton's unconstitutional removal, even after this Court found Denton was likely to succeed on his claims. Respecting Daraldik, the Amended Complaint alleges in particular:

- Daraldik continued to enforce Denton's unconstitutional removal by maintaining that he was the Student Senate President even after the Student Supreme Court ordered him to reinstate Denton. *Id.* at ¶¶211–12, 276, 280, 292, 296, 307, 311.

- Daraldik unlawfully continued to maintain that he was the Student Senate President by invoking Student Senate Rule of Procedure 2.2 which allows "any senator to assume the chair temporarily," when he allowed Denton to preside over the

Student Senate after the Student Supreme Court ordered Denton's reinstatement. *Id.* at ¶213, n.13.

- Denton objected at the time that Daraldik unlawfully maintained that he was still the Student Senate President, but Daraldik ignored his objection. *Id.* at ¶214.

- Daraldik unlawfully maintained that he was the Student Senate President until the expiration of his term. *Id.* at ¶228.

- Daraldik had knowledge at the time of all these acts that Denton's original removal was unconstitutional. *Id.* at ¶239.

- Daraldik knew at the time that additional acts to enforce Denton's unconstitutional removal would contravene this Court's Order granting in part Denton's motion for preliminary injunction. *Id.* at ¶240.

- By obstructing Denton's full, effective reinstatement, Daraldik "prevent[ed] him from vindicating his rights before the expiration of his rightful term." *Id.* at ¶238.

Denton's claims do not target Daraldik as a "figure-head of the Student Senate." Doc. 75 at 3. Rather, they identify specific acts that Daraldik undertook through his power as presiding officer in breach of his official duties and in deprivation of Denton's legal rights. These allegations establish the personal liability of a state actor under § 1983. *See Zatler*, 802 F.2d at 401.

6

**B. The Amended Complaint alleges facts to show that Daraldik's actions were state action.**

Daraldik claims his acts were not state action because "'student members of a student government organization are not state actors in the absence of allegations that college officials "coerced or encouraged" the alleged acts of the students.'" Doc. 75 at 3 (quoting *Dharod v. Los Angeles City Coll.*, 2011 WL 3555622, at *6 (C.D. Cal. June 7, 2011)). That rule is inapplicable for two reasons.

First, the rule is not Eleventh Circuit or Florida law. Daraldik never cites Eleventh Circuit precedent or this Court's analysis in its October 8 Order addressing state action. As this Court noted, the Eleventh Circuit "affirm[ed a] judgment that noted student government 'was a state actor subject to the same constitutional restrictions as the University itself.'" Doc. 55 at 9 (quoting *Ala. Student Party v. Student Gov't Ass'n of the Univ. of Ala.*, 867 F.2d 1344, 1345 (11th Cir. 1989)). Florida law and many other cases surveyed by this Court also show that the Student Senate at Florida State engages in state action and is subject to constitutional restrictions. "The student senate—like all of FSU's student government—is a creature of state statute." Doc. 55 at 9. As a matter of law, the "student government is a part of the university at which it is established." Fla. Stat. § 1004.26(1). Other courts have found that student governments are state actors. *See Koala v. Khosla*, 931 F.3d 887, 894 & n.1, 904 (9th Cir. 2019); *Flint v. Dennison*, 488 F.3d 816, 825

7

(9th Cir. 2007); *Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361, 365–66 (8th Cir. 1988).

Daraldik addresses none of these cases, which this Court cited favorably. *Compare* Doc. 55 at 9–10 (citing all these cases) *with* Doc. 75 at 3–5 (claiming no state action but citing none of these cases or this Court's Order). The Amended Complaint alleges facts showing that Daraldik was a state actor under these precedents. *See* Doc. 69 at ¶¶22–25 (SGA part of University Department and acts subject to review), 31 (SGA operated by University as an educational benefit), 35–39 (SGA created by Florida state law and required to comply with the United States Constitution), 40–41 (Daraldik required to follow all applicable law as presiding officer of the Student Senate).

Second, the cases Daraldik cites do not apply. *Dharod* addressed a community college in Los Angeles. The Plaintiff in that case failed to "allege any facts that plausibly suggest that the Student Defendants were acting under color of state law or that the contested actions of the Student Defendants were fairly attributable to the government." 2011 WL 3555622, at *6.

The test the *Dharod* court applied, and attributed to the Second Circuit, is that "student members of a student government organization are not state actors in the absence of allegations that college officials 'coerced or encouraged' the alleged acts of the students." *Id.* (quoting *Husain v. Springer*, 494 F.3d 108, 134–35 (2d Cir. 2007)). But the test the

*Husain* court articulated was to determine whether a "*private individual may be treated as a state actor* for purposes of a constitutional challenge . . . ." *Id.* at 134 (emphasis added).

In a more recent case which Daraldik's motion does not address, the Ninth Circuit held that a plaintiff sufficiently pled that the defendant student government and its officers were state actors. *See Koala*, 931 F.3d at 894 n.1 (stating that plaintiff "pleads the requisite state action for each of *The Koala's* First Amendment claims"). The court agreed that the student government was a state actor because "the Associated Students are official units of the University," and did not mention *Dharod* or apply the "coerced or encouraged" test from *Husain*. *Id.* (quotation omitted).

Here, as in *Koala*, the Student Senate *is* a state actor by virtue of its creation in state law and its status as a "part" of the University. Fla. Stat. § 1004.26(1). When Daraldik presided over the Student Senate, he was a state actor too. *See Powell v. McCormack*, 395 U.S. 486, 504 (1969) (the "legislative [officials] who participate[] in the unconstitutional activity are responsible for their acts"). Therefore, Daraldik's reliance on *Dharod*—which was not followed by later Ninth Circuit precedent and applied a test for determining when private actors may be deemed state actors—is inapplicable to this case, where Daraldik was an officer of a body that is a *de jure* state actor.

Daraldik also relies on *Fla. A & M Univ. Bd. of Trustees v. Bruno*, 198 So.3d 1040, 1044–45 (Fla Dist. Ct. App. 2016) which observed that "student government is an extracurricular activity—not real government—and it is well-settled that students have no constitutionally protected right to participate in extracurricular activities." *See* Doc. 75 at 4. *Bruno* had nothing to do with determining whether a student government engages in state action. In any event, even though a student has no freestanding right to participate in the activity, just as no citizen has a right to be elected to a "real government," a student *does* have a right to be free from unconstitutional retaliation once he is elected, just as an elected representative may not be expelled from a state house of representatives for his exercise of constitutional rights. *See* Doc. 55 at 16 (citing *Bond v. Floyd*, 385 U.S. 116, 137 (1966)).

Denton properly alleges that the Student Senate is a state actor and that Daraldik took specific actions as a state actor that violated Denton's rights.

## II. The Amended Complaint sufficiently alleges facts to state a claim against Daraldik.

Daraldik also claims that Denton fails to state a claim generally. *See* Doc. 75 at 15–17. Daraldik complains about the number of times that he was mentioned by name in the Amended Complaint and asserts that the "Complaint does not successfully indicate, from a factual standpoint, what Daraldik did wrongfully." *Id.* at 16–17.

The Amended Complaint details numerous specific acts by Daraldik in deprivation of Denton's rights. *See supra* Part I.A. Notwithstanding those allegations, Daraldik points to the Amended Complaint's "Allegations of Law" section, which, according to Daraldik, is "replete . . . with references as to how the 'Student Senate' allegedly wronged Plaintiff" but is light on allegations about Daraldik's involvement in the Student Senate's wrongs. *Id.* at 16.

That ignores allegations about Daraldik's *leadership* of the Student Senate, especially his power and duty respecting motions raised by senators. Denton alleges that Daraldik is personally responsible for the wrongs of the Student Senate because he used his power to allow unlawful and improper motions to go to the floor for a vote. Denton alleges that Daraldik had the power and duty to follow the Rules of the Senate and the United States Constitution. Doc. 69 at ¶41. Denton alleges that Daraldik exercised this power and duty on other occasions to prevent some motions which he deemed to be out of order from going to the floor for a vote. *Id.* at ¶114. Denton alleges that the "Student Senate's rules expressly prohibit motions of no-confidence for any purpose that would result in a violation of the Senate Conduct Code." *Id.* at ¶111. Denton alleges that the motion of no confidence against him contravened this rule. *Id.* at ¶115. Denton alleges that Daraldik therefore had the power and the duty to find the motion of no-confidence against him out

of order and to keep the motion from going to the floor for a vote. *Id.* at ¶116. Denton alleges that Daraldik breached this duty. *Id.* at ¶117.

In short, Denton alleges that Daraldik had the duty and the power to unilaterally prevent *every* harm that the Student Senate as a whole imposed upon Denton. Denton squarely alleges that Daraldik is responsible for these harms because, but for Daraldik's decision to allow the motions to go to the floor for a vote, none of the motions against Denton could have been approved by the body. Denton squarely alleges "an affirmative causal connection" between particular acts taken by Daraldik as presiding officer of the Student Senate and the harms he suffered. *Zatler*, 802 F.2d at 401. These allegations, in addition to the acts described in detail in Part I.A above, contain more than "'enough factual matter . . . to suggest' the required element[s]" of Denton's claims. *Watts v. Fla. Int'l Univ.* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Therefore, Denton has plead sufficient facts to state a claim against Daraldik.

## III. Daraldik is not entitled to qualified immunity.

Daraldik is not entitled to qualified immunity because his acts breached Denton's "clearly established" rights at the time he acted. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Denton's rights to be free from retaliation for his speech and hostility toward his religious beliefs were clearly established in any event. But Daraldik went even further, continuing to enforce Denton's unconstitutional removal even after this

12

Court put him on direct notice about the applicable, clearly established constitutional rights.

### A. Denton alleges that Daraldik's acts presiding over, furthering, and enforcing Denton's removal violated clearly established law.

To overcome qualified immunity, a plaintiff must show that defendant "violated a constitutional right" that "was clearly established at the time of the violation." *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The "clearly established" standard does not require defendant's acts to be "materially similar to prior precedent" or already declared unconstitutional. *Id.* at 1277–78. Rather, when "in the light of preexisting law, the unlawfulness [is] apparent," there is no qualified immunity. *Shephard v. Davis*, 300 F. App'x 832, 839 (11th Cir. 2008). Such preexisting law includes a "broader, clearly established principle" that, applied to the official's conduct, demonstrates liability. *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010). Consequently, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Denton's clearly established rights were violated because the direct application of well-settled precedent demonstrates the unlawfulness of Daraldik's acts. This is true of Denton's free speech retaliation claim. *See Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) ("This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment

13

rights."). This is true of Denton's content and viewpoint discrimination claim. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys.") And this is true of Denton's free exercise hostility claim. *See Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (government officials "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices"); *Church of Lukumi Babalu Aye v. Hialeah*, 508 U.S. 520, 534 (1993) (quotations omitted) ("The [Free Exercise] Clause forbids subtle departures from neutrality and covert suppression of particular religious beliefs.").

These principles apply to student governments. *Ala. Student Party*, 867 F.2d at 1345 (agreeing "that the SGA was a state actor subject to the same constitutional restrictions as the University itself"). And they apply to members of a legislature. *Bond*, 385 U.S. at 137; *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 498 (5th Cir. 2020) ("elected officials are entitled to be free from retaliation for constitutionally protected speech"). As this Court stated (citing several of these cases), "[a]s these cases show, those participating in the political process do not forfeit their First Amendment freedoms (including the right to be free from First Amendment retaliation)." Doc. 55 at 16.

14

Daraldik relies on *Siddique v. Lailiberte*, 972 F.3d 898 (7th Cir. 2020) to claim that none of Denton's rights were clearly established. *See* Doc. 75 at 10–12. But *Siddique* addressed claims that Denton has not raised. The Plaintiff in *Siddique* sued because he did not *receive* an *appointment* to a temporary position in the student government. 972 F.3d at 900. The district court found qualified immunity because "it determined federal law had not clearly established the narrower right of a student to participate in student government under all circumstances." *Id.* at 902. Only on appeal did Siddique "pursue a public-employment theory of his case." *Id.* at 903. The court observed, "Siddique's reliance on a public-employment theory of retaliation in the clearly established portion of his briefing is puzzling in light of the fact that Siddique later disavows the idea that he was an employee of the University." *Id.*

Denton has not raised a novel theory of entitlement to discretionary appointments in student government. Rather, he alleges, and this Court held that he was likely to succeed in showing, that "His claim is that he lost his job—his student government position—because he chose to exercise his First Amendment rights." Doc. 55 at 16. "[I]t [is not] an answer to say, as [Defendant] does," in his invocation of *Siddique*, "that nobody has a constitutional right to serve in student government. That may be true, but that is not the issue." *Id.* at 17. Rather, the Amended Complaint alleges that "Denton *was* serving in student government, and he had a constitutional right not to have that taken away from him based

15

on his privately expressing his religious views." *Id.* (emphasis in original).

The principles prohibiting retaliation against speech and hostility toward free exercise of religion by the state against employees are clearly established. When Daraldik presided over discriminatory motions to remove Denton from his job because of his religious speech (prohibited by the rules of his own body), allowed them to proceed to the floor, and enforced those motions once they carried, he violated Denton's clearly established rights. Daraldik is not entitled to qualified immunity.

**B. Denton alleges that Daraldik's acts after this Court preliminarily enjoined University officials violated clearly established law.**

To make matters worse, Daraldik undertook additional acts to enforce Denton's removal even after he was on notice that the specific acts in question—the Student Senate's discriminatory removal of Denton and the subsequent enforcement of that removal—were unconstitutional. *See supra* Part I.A. Daraldik has claimed that "[t]o deny Daraldik qualified immunity, Plaintiff suggests a young student, participating in an extra-curricular activity, should be akin to a constitutional scholar-this position lacks merit." Doc. 75 at 10. Quite the opposite is true: with a ruling from this Court in one hand and an order from the Student Supreme Court to reinstate Denton in the other, Daraldik continued violating Denton's rights and enforcing the original unconstitutional removal.

16

Daraldik insisted that he was still the president even after he was ordered to reinstate Denton. Doc. 69 at ¶211. Daraldik cannot claim that the fact that he appealed the Student Supreme Court's order to Defendant Hecht justifies his continued assertion of authority. As the Amended Complaint alleges, Chief Justice Ducey explained to Defendant Bowden that the Student Supreme Court's order was effective immediately and not stayed pending appeal (just as Denton was removed immediately despite his own appeal to Hecht). *Id.* at ¶ 208. Yet Bowden agreed when Daraldik continued enforcing the original unconstitutional removal, over Denton's contemporaneous objection, and endorsed Daraldik's claim that he was still Student Senate President. *Id.* at ¶¶211–14.

Daraldik cannot claim that his decision to allow Denton to preside over some senate meetings absolves him of his unconstitutional attempt to maintain the presidency. While Denton did in fact preside over the meetings, Denton alleges that Daraldik claimed he was still the president and only allowed Denton to preside by virtue of his authority *as president* to allow "any senator" to assume the chair. *Id.* at ¶213 & n.13. Daraldik effectively maintained that he was still Student Senate President but that Denton was presiding at his pleasure, undermining Denton's ability to serve the remainder of the term to which he was entitled. *Id.* at ¶238.

All of Daraldik's acts violated Denton's clearly established rights, but Daraldik enjoyed a degree of clarity that officials seldom do: an

17

opinion by a court in an ongoing dispute stating Denton's likely success on the merits on claims arising from the same facts. Yet Daraldik continued to enforce Denton's unconstitutional removal in contradiction to this Court's order, and obstructed Denton from exercising the remainder of his term as ordered by the Student Supreme Court. Daraldik is not entitled to qualified immunity for any of his unlawful acts.

## CONCLUSION

For the reasons above, this Court should deny Daraldik's Motion to Dismiss.

Respectfully submitted on the 25th day of March, 2021.

*s/ Tyson Langhofer*
Tyson Langhofer*
**ALLIANCE DEFENDING FREEDOM**
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
Telephone: (571) 707-4655
Facsimile:  (571) 707-4656
tlanghofer@ADFlegal.org

David A. Cortman
**FLORIDA BAR NO. 18433**
Travis C. Barham*
**ALLIANCE DEFENDING FREEDOM**
1000 Hurricane Shoals Road NE,
Ste. D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile:  (770) 339-6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

Mark Welton
Florida Bar No. 999202

18

**WELTON LAW FIRM, LLC**
1020 S. Ferdon Blvd.
Crestview, FL 32536
Telephone: (850) 682-2120
Facsimile:  (850) 689-0706
mark@weltonlawfirm.com


*\* Admitted Pro Hac Vice*

*Attorneys for Plaintiff*

19

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the length limits of N.D. Fla. Loc. R. 7.1(F) because this document contains 4,059 words according to the word count function of Microsoft Word 365.

2.      This document complies with the requirements of N.D. Fla. Loc. R. 5.1(C) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

Respectfully submitted on the 25th Day of March, 2021.

*s/ Tyson Langhofer*
Tyson Langhofer*
**ALLIANCE DEFENDING FREEDOM**
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
Telephone: (571) 707-4655
Facsimile:  (571) 707-4656
tlanghofer@ADFlegal.org

20